Kavanagh, J.
Appeal from a decision of the Workers’ Compen *838 sation Board, filed April 20, 2007, which ruled, among other things, that Liberty Mutual Insurance Company was responsible for the payment of claimant’s workers’ compensation benefits.
Claimant was a member of the Buffalo Destroyers, an arena football team located in the City of Buffalo, Erie County. Source One Group is a professional employee organization that provides employment related services to entities such as the Destroyers. In March 2003, the Destroyers and Source One entered into an agreement by which Source One was designated as the employer of all Destroyers personnel and, in that capacity, was obligated to obtain for its employees certain employment benefits, including workers’ compensation insurance. Pursuant to this agreement, Source One obtained workers’ compensation insurance for the Destroyers personnel, including claimant, through Liberty Mutual Insurance Company, and a certificate of insurance to that effect was issued in March 2003.[1]
On April 16, 2003, claimant was injured while participating in a football game for the Destroyers, and he subsequently filed a claim with Liberty Mutual for the payment of workers’ compensation benefits. Liberty Mutual denied coverage stating, among other things, that, despite Source One’s agreement with the Destroyers, claimant was not an employee of Source One and, therefore, was not entitled to coverage under its policy. A Workers’ Compensation Law Judge (hereinafter WCLJ) determined that claimant, at the time he was injured, was a dual employee of Source One and the Destroyers and, as such, was entitled to coverage under the Liberty Mutual policy. The Workers’ Compensation Board subsequently affirmed this determination, but found that, at the time of his injury, claimant was not a dual employee of both entities, but instead, a special employee of the Destroyers and a general employee of Source One. Liberty Mutual now appeals.
Initially, Liberty Mutual argues that claimant was not an employee of its insured—Source One—and, therefore, he was not eligible for coverage under this policy. It also argues that the policy in question was issued under the Assigned-Risk Plan of Illinois and, pursuant to the rules that govern that plan, coverage under the policy could not be extended to include a New *839 York based entity such as the Destroyers. For reasons that follow, we find that, on the facts presented, Liberty Mutual cannot now deny that claimant was entitled to coverage under this policy and it is therefore responsible for the payment of his workers’ compensation benefits.
As for Liberty Mutual’s claim that Source One was not claimant’s employer, whether such a relationship exists is “ordinarily a factual determination which will be upheld if the record contains substantial evidence to support it” (Matter of Cabrera v Two-Three-Nought-Four Assoc., 46 AD3d 1255, 1257 [2007]; see Thompson v Grumman Aerospace Corp., 78 NY2d 553, 557 [1991]). A key factor in such a determination is whether the entity claimed to be the employer “controls and directs the manner, details and ultimate result of an employee’s work” (Thompson v Grumman Aerospace Corp., 78 NY2d at 558). Moreover, the existence of an agreement that seeks to establish such a relationship will not displace a judicial assessment of the actual relationship designed “to ascertain the special employment status for workers’ compensation purposes” (id. at 560).
Here, claimant had no involvement with Source One. While Source One, pursuant to its agreement with the Destroyers, technically had the right to hire, terminate and discipline Destroyers personnel, it, in reality, had no meaningful involvement in the Destroyers’ employment activities and it was merely a conduit through which the Destroyers obtained workers’ compensation insurance for its personnel. Claimant not only had no contractual relationship with Source One, but it played no role in controlling claimant’s work or establishing his compensation. Instead, the Destroyers provided all of claimant’s equipment, supervised his work, and benefitted from his services (see Matter of Fisher v KJ Transp., 27 AD3d 934, 934 [2006]; see also Thompson u Grumman Aerospace Corp., 78 NY2d at 557; Matter of Hasbrouck v International Bus. Machs. Corp., 38 AD3d 1146, 1147 [2007]; Perkins v Dryden Ambulance, Inc., 31 AD3d 859, 859-860 [2006]; Schramm v Cold Spring Harbor Lab., 17 AD3d 661, 662 [2005]). Moreover, the Destroyers provided the funds that Source One used to pay claimant’s salary, as well as the premiums that Liberty Mutual charged for this workers’ compensation policy.[2] Simply stated, this agreement between Source One and the Destroyers, other than listing Source One as claimant’s employer on his paycheck and W-2 form, “did nothing to actually alter the employer-employee rela *840 tionship” that existed between claimant and the Destroyers (Matter of Fisher v KJ Transp., 27 AD3d at 935).[3]
However, while claimant was not a Source One employee at the time of his injury, we conclude that Liberty Mutual, on the facts presented, cannot now deny coverage to claimant under the terms of this policy. As previously noted, the certificate of insurance that Liberty Mutual now attempts to disavow was issued in March 2003—approximately one month prior to claimant’s injury naming the Destroyers as an additional insured on the Liberty Mutual policy. Four months later, representatives of Liberty Mutual met with the agency charged with the administration of this policy, performed an audit on Source One’s payroll lists, and specifically discussed whether the Destroyers personnel were on Source One’s lists. After it performed a second audit of Source One’s payroll, Liberty Mutual authorized the agent who had issued the certificate of insurance naming the Destroyers as an additional insured under the policy to assume lead agent status on the policy. In addition, Liberty Mutual acknowledges that the policy was rewritten, making it retroactive to cover a period of time prior to when the certificate of insurance had been issued.[4]
In addition, Liberty Mutual was well aware of Source One’s status as an organization providing employment services to professional sports organizations, and it provided Source One with workers’ compensation insurance for other professional football teams and their personnel. Given this background and its acceptance of payments for premiums on this policy, we conclude that Liberty Mutual cannot now deny its obligation to pay claimant workers’ compensation benefits under the terms of this policy (see Lenox Realty v Excelsior Ins. Co., 255 AD2d
*841 644, 645-646 [1998], lv denied 93 NY2d 807 [1999]; Zurich Ins. Co. v White, 221 AD2d 700, 703 [1995], lv denied 88 NY2d 804 [1996]; Bucon, Inc. v Pennsylvania Mfg. Assn. Ins. Co., 151 AD2d 207, 210-211 [1989]; see also Wainwright v Charlew Constr. Co., 302 AD2d 784, 785 [2003]; compare Tribeca Broadway Assoc. v Mount Vernon Fire Ins. Co., 5 AD3d 198 [2004]).
Finally, Liberty Mutual claims that since this policy was issued pursuant to the Assigned-Risk Plan of Illinois, it is governed by the rules of that plan—and these rules do not permit that a policy be expanded to include coverage for employees of a New York entity like the Destroyers. However, as noted by a representative of Liberty Mutual during these proceedings, these policy rules did not bar Liberty Mutual from writing “any policy for coverage [that Liberty Mutual] so choose[s].” Here, by its conduct, Liberty Mutual voluntarily assumed the obligation to provide workers’ compensation benefits to Destroyers personnel and it is bound to provide claimant coverage under this policy (see Bucon, Inc. v Pennsylvania Mfg. Assn. Ins. Co., 151 AD2d at 211).
Cardona, PJ., Peters, Rose and Stein, JJ., concur. Ordered that the decision is affirmed, without costs.

. Later, it was determined that the agency that issued the certificate of insurance could not be substituted for the original lead agent on the Liberty Mutual policy—and a similar policy providing such coverage was obtained by Source One from Travelers Insurance Company. In May 2003, the National Council on Compensation Insurance determined that Source One had in effect two workers’ compensation policies for its employees and determined that one should be cancelled. Pursuant to this finding, the Travelers policy was cancelled, and Source One retained coverage under the Liberty Mutual policy.

. Approximately $100,000 was paid by the Destroyers for the premiums on the policy.

. The Destroyers argued that the New York Professional Employer Act (see Labor Law § 915 et seq.) applies and, therefore, Source One was a professional employer organization as defined by that Act. Tellingly, the Board did not find that the Act applied or that Source One was a professional employer organization as defined therein. While it is true that a professional employer organization has the right to, among other things, assume responsibility to “secure and provide required workers’ compensation coverage for its worksite employees either in its own name or in its client’s name” (Labor Law § 922 [3] [c]), there is nothing in the record establishing that Source One is, in fact, a registered professional employer organization or exempt from registration (see Labor Law § 919) and, therefore, the Act does not apply herein.

. A representative of Liberty Mutual testified that in September or October 2003, he informed the owner of the Destroyers that the Destroyers could not be covered under the policy. However, the representative also acknowledged that he never sent the Destroyers “a letter, an email, a telegram [or] any [other] writing to the Buffalo Destroyers telling them that they weren’t covered.”